Chambers v. Ingham.

----

CHAMBERS v. INGHAM *et al.*

1. **Appeal:** TO SUPREME COURT: EQUITY CAUSE TRIED DE NOVO. An equity cause tried by the first method, when appealed to the Supreme Court is to be there tried *de novo*, notwithstanding there are special findings of the jury upon certain questions of fact submitted to them by the court. Nor is it necessary to a review of the case that the instructions of the court, under which such special issues were submitted, should be embodied in the record.

2. —— CERTIFICATION OF EVIDENCE. A certificate of the clerk of the District Court, in an equity case tried by the first method, that " the

depositions accompanying the transcript, marked A, B, C, D and E, are all of the evidence in the said case used in the trial thereof," is sufficient when the depositions thus referred to are found as designated.

*Appeal from Scott District Court.*

TUESDAY, JUNE 30.

PETITION claims $2,000, and alleges, that, in the year 1863, plaintiff and defendants entered into a copartnership for the purpose of furnishing horses for the government of the United States; that, in carrying on said business, said firm made $7,098.12 profits; that defendants hold said profits and refuse to account to plaintiff and pay over his share thereof, although often requested so to do; that the share of each partner was equal, and amounted to one-sixth of the whole. Prays for an accounting, and judgment for his share.

An amended petition was filed during the progress of the trial, which alleges, First, that in matter of furnishing the horses set forth in original petition, plaintiff was a partner with the defendants, Kelly, Smith and Washburn, and entitled to one-fourth of five-twelfths of the profits of said business. Second, that he was a partner with said Ingham and Hooker, and entitled to one-third of seven-twelfths of the profits of said business.

And further alleges that he cannot determine which group of facts he can prove, but believes that he can prove one or the other of such groups, and asks for judgment on one only.

The defendants, S. R. Ingham and E. F. Hooker, answer separately, denying each allegation of the original petition, and, by agreement filed between plaintiff and said defendants, it is stipulated that all of the allegations of the amended petition, except the third count, which was stricken out, were to be considered as denied and at

issue. The defendants, Kelly, Smith and Washburn, by joint answer, deny the allegations of the original petition, and set up that a copartnership did exist between them and defendant, Ingham, to furnish the horses set forth in the petition; that defendant, Ingham, was to furnish seven-twelfths of funds and have seven-twelfths of profits, and they were to furnish five-twelfths of funds and have five-twelfths of profits; that their agreement of copartnership was reduced to writing.

The cause was triable by the first method, and the testimony was taken in writing. Under section 2999 of the Revision, the District Court submitted certain specific questions of fact to the jury.

The first question was this: "Was the plaintiff a partner with the defendants or any of them in the business of furnishing horses for the 8th Iowa cavalry?" To this, the jury answered "Yes." To the second question, the jury answered that he was a partner with the defendants Ingham and Hooker and not with the defendants Kelly, Smith and Washburn. To the third question, they answered that the profits of the business were $7,098.12. To the fourth question, they answered that the plaintiff's (Chambers') share of the profits were (one-third of seven-twelfths) $1,380.19 principal and $336.63 interest.

The District Court rendered a decree accordingly against Ingham and Hooker for this amount and costs, and dismissed the plaintiff's bill as to Kelly, Smith and Washburn. Ingham and Hooker appeal.

The other necessary facts are stated in the opinion.

*Davison & True* for Ingham and Hooker (appellants).

*Brown & Sully* for the plaintiff (Chambers).

*Parker & McNeal,* and *Cook & Drury* for Kelly, Smith and Washburn.

DILLON, Ch. J.—The cause is in equity and triable by the first method. Notwithstanding the special finding of the jury, the cause is to be tried in this court *de novo.* (Rev. § 2999, ¶ 3.) The record does show what the special verdict was, and there is no indispensable necessity that the charge of the court should be brought up. At all events, the objections made by the plaintiff on the argument in this court, that this cause cannot be reviewed in consequence of the absence of the instructions to the jury in reference to the special issues, is not tenable, the record not showing that any instructions as to questions of law, or as to the considerations which should guide them in answering the special issues, were given. The instructions incidentally referred to on the record entry, may have consisted wholly of explanations of the questions, and directions as to the mode of answering them. Besides, these findings have no conclusive weight, and are to be accepted or rejected as the court considers equitable. (Rev. § 2999, ¶ 2.) Of course the instructions might have been, and, if not lost, properly should have been, embraced in the record on appeal.

*1. APPEAL: to Supreme Court: equity cause tried de novo.*

The plaintiff makes another point preliminary in its nature, viz., that the evidence is not properly identified or certified. The clerk, however, certifies that " the depositions accompanying this transcript marked A, B, C, D and E, are all of the evidence in the said case used on the trial thereof."

*2.—— certification of evidence.*

We find the depositions thus referred to and all of them marked as thus designated. This we hold to be sufficient in the absence of any showing or suggestion that other depositions have been substituted. On examining the deposition referred to, we are fully satisfied that they are the identical ones referred to by the clerk.

This brings us to the case upon its merits. As the

cause turns wholly upon the weight to be given to conflict-
ing testimony, we adhere to the rule we have adopted, —
to state conclusions, and not to enter into an extended
discussion of the evidence.   This has been examined and
re-examined by the members of the court separately and
in concert.

A majority of the court are of the opinion that the
plaintiff has established a meritorious claim, and that he
ought to be paid, and agree to the disposition of the cause
as hereinafter stated, saving the rights of the defendants
as among themselves.   That the plaintiff rendered ser-
vices in buying and procuring horses to fill the contract
is not denied; that he performed as much or even more
actual labor in this respect than any of the defendants is
quite clear; that this was done at the instance and with
the full knowledge and assent of all of the defendants is
an admitted fact in the case; that for these services he
has ever been paid is not claimed by any of the defend-
ants.   The petition and amended petition are so framed
that the plaintiff can have any relief that the court may
consider equitable. (*See statement.*)   We are clearly of
opinion that the jury were justified in finding as they did
that the plaintiff was a partner with the defendants in
the business of furnishing horses for the 8th Iowa cavalry.

But the question which is mainly controverted by the
defendants among themselves is, whether he was a partner
with Smith, Kelly and Washburn, or with Ingham and
Hooker.   Smith, Kelly and Washburn claim, and the tes-
timony introduced by them tends to show, that the plaint-
iff's interest in the contract was with Ingham and Hooker.
The latter claim, and the testimony produced by them
tends to show that the plaintiff's interest was with Smith,
Kelly and Washburn.

Taking the evidence together, the transaction may
be fairly explained in this wise: Plaintiff originally was

to be interested equally with the other defendants. But when the contract was awarded to Hooker, his side insisted on a new arrangement, and accordingly a new contract was made between Kelly, Smith and Washburn, of Davenport, on the one side, and Ingham and Hooker, of Des Moines, on the other, whereby the former were to furnish five-twelfths of the capital and have five-twelfths of the profits, and the latter to furnish seven-twelfths of the capital and have seven-twelfths of the profits. This contract was reduced to writing, and was concluded by the defendants in the absence and without the knowledge of the plaintiff, who was not advised of its existence until after this suit was commenced.

Under the impression that he was interested in the contract, as was beyond controversy the original understanding, and by direction of all the parties who signed it, that is, by the direction of all of the defendants, the plaintiff performed his share, if not more than his share, of the labor of fulfilling it. The defendants have received the benefit of his services. The plaintiff states that these services were rendered by him upon the understanding with the defendants that he was to have one-fourth of five-twelfths of the profits. Had he not by his testimony twice limited the amount, as above stated, we should, perhaps, have regarded him as equitably entitled to one-sixth of the profits.

As it is, he cannot complain that he is allowed as much as he claims. The defendants cannot complain of this amount, although, as between them, they differ as to which side should pay it.

This result avoids the anomaly presented by the findings of the jury, and decree of the District Court, viz., of forcing the plaintiff to take more than, upon his oath, twice repeated, he claims to be entitled to.

The amount of the profits is undisputed, viz., $7,098.12.

HARVARD LAW SCHOOL LIBRARY

Chambers v. Ingham.

This amount was received and divided between the defendants, Kelly, Smith and Washburn receiving five-twelfths thereof, and Ingham and Hooker, representing Hooker & Co., seven-twelfths thereof. This division was made with the knowledge of the plaintiff; and when he requested the Kelly, Smith and Washburn side to settle with him for his interest, they refused, saying that Hooker & Co. had his share. When he demanded payment from the latter, they refused, saying that Kelly, Smith and Washburn were to pay him. What we decide is, that the plaintiff has established a claim against all of the defendants, to the extent above stated. As the defendants do not seek any relief herein, as against each other, we do not decide, as between them, which side (Davenport or Des Moines side of the contract) is primarily liable for the amount due the plaintiff.

This we leave an open question, to be adjusted in a subsequent suit between the defendants.

If Kelly & Co. can establish that Hooker & Co., at the time the written contract was entered into (in the plaintiff's absence), agreed with them "to take care of Bill's (the plaintiff's) interest," then they can recover of them the amount which, by this decree, they will be obliged to pay to the plaintiff. If, on the other hand, Hooker & Co. can establish that it was the understanding that Kelly & Co. was to pay or compensate the plaintiff, then they can recover from them the amount which, by this decree, they are obliged to pay to the plaintiff.

On this basis there is due the plaintiff (including $100 for the horse furnished and not settled for, and including interest to July 1, 1868) the sum of $1,175, of which amount Kelly, Smith and Washburn are decreed to pay the sum of $490, and Ingham and Hooker the sum of $685.

The costs in the District Court to be paid one-half by

Kelly & Co. and the other by Hooker & Co. The costs in this court to be paid by the plaintiff.

The cause will be remanded, with directions to enter a decree in conformity with this opinion.

Judgment will be entered in this court accordingly.

WRIGHT, J. (dissenting). — I object to the foregoing opinion for the reason that it makes a contract for the parties which is not claimed in the pleadings, and which finds no kind of support in the evidence.

It is quite likely that if the contract, recognized in the foregoing opinion, had been suggested or had occurred to them, they would have made it; but as they did not, I do not believe it is our duty to make one for them, nor to help out a hard case, merely because plaintiff's claims are meritorious and he ought to have something from some person.

Plaintiff, by the majority opinion, is confined to one-fourth of five-twelfths of the profits, because by his own testimony he thus limits the amount; and but for this he would have been entitled to one-sixth of the profits, "and thus the anomaly is prevented of forcing upon him a greater amount than by his oath, twice repeated, he claims to be entitled to." But, by this same oath, he makes Smith, Kelly and Washburn his debtors, and not the other parties to the contract. Now, if he had not so testified, I might have concluded that his claim was against all. There is evidence tending to show that his claim was solely against Ingham and Hooker; while other parts of it tend to establish a liability alone on the part of Kelly and others. But I fail to find in the record the least evidence that he or any one dreamed that he had a claim against *all of them*. There was some warrant for the finding of the jury against Ingham and Hooker. And yet I think the decided weight of the testimony is

that plaintiff's claim was against the other parties. That it was against *all*, I do not believe. I am sure he did not so understand it according to his own testimony. I think it is quite as inconsistent to give him relief which he disproves by his own evidence, as it would be to deny him all aid because by his own carelessness or otherwise he failed to have an understanding as to who was to be his debtor, or left it so indefinite that it cannot be told where the liability is. If he has failed to establish a liability on some one of the parties, I should not help him out by making all pay. I know of no excuse for this, except the thought that defendants should be thankful that one side or the other was not made to pay all Its sufficiency, I confess, I did not appreciate. I doubt whether they will or should.